# 𝕾taunton

G. W. Francisco v. W. C. Neel, J. Powell Royall, Ad-
ministrator of the Estate of Cyrus B. Neel,
Deceased, and Hattie Neel Johnston.

September 11, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning
and Eggleston, JJ.

The opinion states the case.

*Kingdon & Wagner*, for the appellant.

*J. Powell Royall*, for the appellees.

HOLT, J., delivered the opinion of the court.

We are to determine if a certain deed of date December 31, 1934, from W. C. Neel to his sister, Hattie Neel Johnston, of record in the County Clerk's Office of Tazewell county, is valid or void.

In June, 1932, G. W. Francisco and W. C. Neel entered into a partnership, the purpose of which was to operate a meat market in Bluefield, West Virginia. Neel was to be its manager and was to draw out of the business as compensation for his services $80 a month. Profits, losses and partnership debts they were to share and to share alike. This business, as planned, was conducted until some time in December, 1932, when Neel took the books, locked the door and walked away. Francisco did not hear of him for several months, and did not see him until April, 1934, when he met him by chance on one of the streets of that city. In the meantime Francisco had paid on account of partnership debts $937.40. There are also partnership debts outstanding and unpaid amounting to $414.97. As between these partners Neel is of course liable for one-half of this indebtedness.

When Francisco met Neel in April, 1934, he said to him, "What did you mean doing me this way, leaving me with the bag to hold, and you couldn't be found?" Also, "I am

going to make my money, I can tell you one thing, I am going to make my money, you are a young man and I am going to make it." Neel answered, "Make it if you can."

Silas B. Neel, a resident of Tazewell County and father of W. C. Neel, died intestate on the 19th day of December, 1934, leaving as his heirs and distributees five children and an estate consisting of $1,550.60 in cash, together with the real estate and note valued at $3,732.16. W. C. Neel of course took a one-fifth interest.

J. B. Wagner is an attorney at law and represented Francisco. He saw Neel on the 27th day of December, 1934, and attempted to secure from him an assignment of this interest in his father's estate. Neel refused to make the assignment and said, "that he did not want to pay anything to Mr. Francisco." Upon Neel's refusal, Wagner told him that they intended to bring suit. Suit was brought in January, 1935.

Mrs. Johnston testified that she herself drafted and signed this paper:

"Princeton, West Virginia,
December 24, 1934.

"I have this day 24th of December, 1934, made settlement with W. C. Neel, and agree to accept deed for his interest in our Father's estate in full for the following note dated March 1, 1932, for six hundred and fifty dollars ($650.00) with interest at 6% for thirty four months which is one hundred and ten dollars and fifty cents ($110.50). Also seven hundred and five dollars ($705.00) for Board and room for twenty three and one-half months at thirty dollars per month dating from December 19, 1932.

"Total one thousand four hundred and sixty-five dollars and fifty cents; ($1,465.50).

"(Signed)   Mrs. H. P. Johnston
"Witness: L. C. Rose,
            Princeton, W. Va."

Soon afterwards the deed in controversy was executed, acknowledged and recorded. It reads:

"This Deed, made this 31st day of December, 1934, between W. C. Neel, widower, party of the first part, and Hattie Neel Johnston, wife of H. P. Johnston, party of the second part, both of Mercer County, West Virginia.

"Whereas, one C. B. Neel, of Tazewell County, Virginia, died intestate on the 20th day of December, 1934, leaving the party of the first part as one of five heirs, and,

"Whereas, the party of the first part has agreed to sell his interest in said estate inherited by him as one of the children and heirs at law of the late C. B. Neel.

"Now, Therefore, This Deed Witnesseth: That for and in consideration of the sum of One Dollar ($1.00), and other good and valuable considerations, the receipt of all which is hereby acknowledged, the party of the first part doth hereby grant and convey unto the party of the second part, with covenants of general warranty of title, an undivided one-fifth interest in all the estate of every kind and character, of which the said C. B. Neel died seized and possessed.

"Witness the following signature and seal.
"(Signed)   W. C. NEEL   (Seal)."

Mrs. Johnston has testified that she is an innocent purchaser for value without notice. She said that her brother borrowed $500 from her in February, 1926, and gave her his note therefor and that he borrowed $150 in October following and also gave a note for it, and paid the interest on both notes to March 1, 1932, when they were consolidated into one of $650. That note was introduced in evidence. There was due thereon at the time of the transfer here under attack interest unpaid, $110.50. She also says that her brother boarded with her from December 19, 1932, to December 24, 1934, for which she has charged at the rate of $30 a month, or $705, making the amount of his indebtedness to her $1,465.50.

She and her husband went to Florida in September, 1925, and left there in June, 1926. During this nine months' stay he worked as locomotive engineer on the Florida East Coast Railway. The evidence does not tell us how long he was so employed. The $500 loan was made by check, given during

their stay in Florida, and the $150 was made by check, given after their return to West Virginia but on a Florida bank. These cancelled checks have not been produced and no attempt has been made to account for failure to produce them. Mrs. Johnston does not undertake to tell us how she came by this money so freely loaned. She does not claim that it came from her husband, and all that she does tell us is that she worked in a Jacksonville department store, but she is unable to tell us how long she was employed or what her wages were.

She also claims that her brother boarded with her for more than two years and paid nothing on account, although he was certainly for a part of that time a part time employee in a Kroger grocery store.

Mr. and Mrs. Johnston appear to be people in moderate circumstances. He works as an automobile salesman on a commission basis for the Johnston Motor Company, a business owned and operated by his brothers in Princeton, West Virginia.

While it is possible, it is not probable that she and her husband would have boarded for so long a time a brother without pay and without prospect of pay. He was a young man, grown and presumably in good health, and at work for a part of the time.

It is certainly plain that Neel paid nothing to Francisco and intended to pay nothing. We have his word for it. Was the sister an innocent purchaser or was she a party to this purpose? If checks were given they should have been produced or accounted for. She has made no real effort to tell us from whence the money came, and she has told an improbable story. Explanations were in order. Her husband might have corroborated her. He was available as a witness but was not called for this purpose, nor has Neel himself testified.

The speed with which this transfer was effected, in view of the imminence of an attack, is in itself suspicious. The father died on the 19th of December, and the contract of transfer was written on the 24th.

Nothing can be accomplished by undertaking to review unnumbered cases on fraudulent conveyances.

Fraud is not to be presumed but must be proved by evidence clear, cogent and convincing. This evidence may be circumstantial and generally is. Men do not proclaim such a purpose from the housetops.

One may prefer a *bona fide* creditor, and the fact that a grantor is moved by a fraudulent purpose is not in itself sufficient to vitiate the transaction. Relationship is not a badge of fraud, but it does call for closer scrutiny than is usually necessary in dealings between strangers.

In the light of these rules and of the evidence in this case, which has been carefully considered, we reach the conclusion that the transfer was made with the intent to defraud, and that the transferee is not a purchaser for value. This, circumstances show, as does her own testimony.

For these reasons the decree appealed from must be set aside, and this cause is remanded to be proceeded with in accordance with the views here stated.

*Reversed and remanded.*