# Richmond

## Larma Frances Talley v. Draper Construction Company, Inc.

March 9, 1970.

Record No. 7042.

Present, All the Justices.

*Alex N. Apostolou*, for plaintiff in error.

*Daniel S. Brown; Carroll D. Rea* (*Hazelgrove, Carr, Dickinson, Smith & Rea*, on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Larma Frances Talley, injured when the automobile which she was operating collided with construction equipment of Draper Construction Company, Inc., brought this law action for damages. At the conclusion of all the evidence the trial court sustained defendant's motion to strike plaintiff's evidence, discharged the jury and entered summary judgment for defendant. This action of the trial court is the sole assignment of error.

The collision occurred after dark at approximately 7:00 P.M. on Saturday, September 26, 1964, in the 3800 block of Whiteside Boule-

vard in the City of Roanoke about 534 feet south of Brentwood Baptist Church. Whiteside Boulevard runs north and south. At the time of the accident it was a four-lane street 64 feet wide with a double white line in the center separating northbound and southbound lanes, which were marked off by single broken lines. The speed limit was 35 miles per hour. From the Brentwood Church to the point of collision the street was straight and practically level.

Earlier on the day of the accident Draper's employees had been engaged in installing and connecting a sewer line which extended from a manhole in the center of Whiteside Boulevard across the two southbound lanes of traffic to a new subdivision on the west. The line was placed in a ditch three feet wide, which was then backfilled by hand and tamped by a tamper machine attached to a dark red tractor. When the Draper employees left the job at 2:30 P.M. asphalt had not been laid along the top of the filled-in ditch, the dirt surface of which was then about three inches lower than that of the adjacent street.

Before they left the workmen parked the tractor, which with its attachments was six or seven feet high and weighed about eight tons, parallel to and about six inches north of the north edge of the ditch. This equipment came within about two feet of extending across the entire length of the ditch in Whiteside Boulevard. The work crew then placed on each side of the ditch two wooden barricades painted yellow or orange, flaring out from their intersection in the center of the street at the eastern end of the ditch to points approximately 18 feet north and 18 feet south of its western end at the curb.

One oil smudge pot was placed at the eastern end of the ditch and ten or twelve others were placed three to four feet in front of the barricades. A "Keep Left" sign and at least half of the smudge pots were placed on the north side of the ditch. Twenty to twenty-five feet north of the ditch a metal "Men Working" sign 3½ feet high by 3 feet wide, painted yellow or orange, was set on a stand with a smudge pot in front of it. An overhead city street light was located 74 feet south of the ditch.

Draper's crew left all smudge pots burning. No watchman was stationed at the project site and no inspections were made or contemplated by Draper personnel to determine that barricades and signs remained in place and smudge pots continued to burn.

When plaintiff drove her husband's 2-door 1963 Fairlane Ford south on Whiteside Boulevard Saturday evening the street was dry.

She drove into defendant's machinery, seriously injuring herself and severely damaging both automobile and machinery.

Under familiar principles, the evidence will be considered in the light most favorable to plaintiff in determining whether she was entitled to go to the jury.

Plaintiff's first two witnesses were former police officers, C. C. Harris and G. W. Hollins, who had investigated the accident. They found that the Talley car in colliding with the Draper equipment had been torn from side to side along its firewall into two pieces, one of which was lying 25 feet south of the ditch. The impact had also damaged the equipment and moved the one-ton tamper attachment until it rested at a 90° angle to its former position. The officers measured skid marks which extended in unbroken lines 100 feet to the point of impact. The construction equipment and both pieces of the car were so badly damaged that the initial point of impact on either car or equipment could not be determined.

Harris observed barriers scattered around the street and smudge pots, some of which had been knocked over and were not burning. He could not remember where the several burning smudge pots were located.

Hollins recalled that two or more smudge pots were burning and one of these was on the north side of the ditch. He also testified that the Talley car had made a path through and over some of the barricades and smudge pots. The front part of the car remained at the "dirt machine" and the rear part, in which plaintiff was found unconscious under the front seat, lay to the south. The skid marks, unbroken throughout their entire length, were heavy and straight to a point and then curved around with side marks indicating that the rear of the car had swerved. In his opinion this accounted for the car having been "cut in half".

Mrs. Eugene Evans testified that just after dark on the evening of the accident she was driven south by her husband past the street project. No light was on the equipment, no signs were there, she saw no barriers and there was only one smudge pot flickering on and off near the back part of the machinery.

Mr. and Mrs. Danny Holly, Jr. testified that on the same evening after dark when they drove south on Whiteside past the obstruction there was only one smudge pot burning like a candle near the manhole cover at the left.

When Roy D. Trout drove north on Whiteside past the ditch just

before the accident there were only a couple of smudge pots burning. He believed there were none in the southbound lanes. He saw no signs or markers.

T. E. Yopp, Draper's foreman in charge of the construction project, was called as a witness for plaintiff. He testified about the work done and equipment used on the job. He also described the placing of machinery and warning devices by the work crew before they left. According to Yopp, the precautionary measures taken were in accordance with trade custom and usage and in compliance with requirements of the City of Roanoke.

Walter L. Draper, defendant's president, was called as an adverse witness. He admitted that it was dangerous to leave machinery in a public street but in his opinion it was the lesser of two evils to do so and in this instance it was done in accordance with normal procedure in the trade.

A highway contractor, John A. Hall, contradicted the testimony of Yopp and Draper as to trade custom and usage. He said that it is generally best to remove equipment from a public street at night. If the equipment must be left overnight then it should be lighted well and barricaded "but the general practice is to have forewarning lights before you get to it". One of these lights should be placed half a block "on either side of the project."

Plaintiff herself was not aware of the construction project. From her home a short distance away in Roanoke County she drove to Whiteside Boulevard to shop at a grocery store in the City of Roanoke. At no time did she look at her speedometer but she did not feel that she was going at any excessive speed. She might have been going 45 to 50 miles per hour by the Creative Packaging plant, which was shown to be about four-tenths of a mile north of the construction project. She then crossed to her outside or right-hand lane to pass another car moving slowly in the inside lane but returned to the inside lane before going by the Brentwood Church. Her speed after passing the church she estimated at 30 to 35 miles per hour but it "could have been a little higher".

Proceeding past Fleming Street (360 feet north of the construction) she was blinded by lights from an oncoming car and turned into her outside lane to avoid the glare. At that instant she looked up and saw something "great big" in the street in front of her and jerked her car back to the left. She thought that she must have applied her brakes and must have "panicked". She did not remember seeing any

lights on the object, any barricades or any lights before the barricades. She did not know which lane she was in when the collision occurred and she remembered nothing about the actual impact. Some days later she regained consciousness in a hospital.

The trial court on two occasions undertook to question plaintiff about the lights. She admitted that she was blinded by high beam lights of an oncoming car but thought that "if there had been lights on the machinery" she would have seen them and so "there wasn't any lights." She stated again that "there were no lights on it. It was just dark—everything was."

Plaintiff repeatedly estimated her speed at 30 to 35 miles per hour between Brentwood Church and the machinery but admitted that she might have been going 40 miles per hour at the time of collision.

In the lower court the grounds assigned for defendant's motion to strike plaintiff's evidence were failure to prove primary negligence, failure to prove causal connection between defendant's alleged negligence and the accident, and plaintiff's contributory negligence.

Plaintiff is barred from recovery because of her negligence which, as conclusively established by her evidence and particularly the undisputed physical facts, proximately caused or contributed to cause the accident. Despite her protestations to the contrary there can be no doubt that plaintiff was operating her car at an excessive rate of speed. Her witnesses testified to the skid marks laid down by her car and to the remarkable damage resulting from the accident.

In the face of these plain and uncontroverted facts plaintiff's vacillating testimony estimating her speed at 30 to 35 miles per hour must give way. She admitted that she did not know what her speed was at any time before the accident. While we adhere to the rule that questions of negligence, contributory negligence and proximate cause are generally for the jury, we also hold that a court is not required to believe that which is contrary to human experience and the laws of nature or which is incredible. *Chesapeake & O. Ry. Co.* v. *Barlow*, 155 Va. 863, 870, 156 S. E. 397, 399 (1931).

Where no reasonable man could fail to deem the derelictions of a litigant negligence "and where the causal connection between these derelictions and the injury complained of is perfectly plain, the court may withdraw these questions from the jury. There is no jury question where reasonable minds may not conflict." *Penoso* v. *D. Pender Grocery Co.*, 177 Va. 245, 249, 13 S. E. 2d 310, 312 (1941); *see Finck* v. *Brock*, 202 Va. 948, 121 S. E. 2d 373 (1961).

At the speed limit of 35 miles per hour plaintiff could have braked her car to a stop in about 63 feet. Code § 46.1-195. To have laid down 100 feet of unbroken skid marks and then struck heavy, stationary machinery with such devastating violence as to cause the physical damage here admitted plaintiff must necessarily have been exceeding the speed limit to an extent that stretches the imagination. "We are not required to believe that which the physical facts demonstrate to be untrue." *Harris* v. *Howerton,* 169 Va. 647, 659, 194 S. E. 692, 697 (1938).

Here, the physical facts demonstrate that plaintiff applied her brakes at least 100 feet from the obstruction. If she had been operating within the speed limit she would have stopped before reaching the machinery, regardless of whether any warning lights were burning or any barricades or signs were standing and regardless of whether she was temporarily blinded by lights of another car.

The only inference to be drawn from the facts is that plaintiff was negligent in operating her car at an excessive rate of speed and that her negligence proximately caused or contributed to cause the accident. Concluding that she was guilty of negligence as a matter of law we hold that the trial court properly sustained the motion to strike plaintiff's evidence.

*Affirmed.*