## Richmond

## PRESTON EDWIN PARKER

## V.

## JESSIE EUGENE DAVIS

August 28, 1980

Record No. 781121

Present: Carrico, Harrison, Cochran, Poff, Compton and Thompson, JJ.

Hugh A. West (R. D. Hunter, III, on briefs), for appellant.
J. Samuel Glasscock (Glasscock, Grady & Savage, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

We review a judgment setting aside a jury verdict awarding the plaintiff, Preston Parker, $45,000 damages for personal injuries sustained in a collision between his Datsun pickup truck and a Cadillac automobile operated by the defendant, Jessie Davis. The defendant concedes primary negligence, and we consider whether the trial court erred in ruling that the appellant-plaintiff was guilty of contributory negligence as a matter of law.

The collision occurred about 9:40 a.m. on a clear, dry day near the Suffolk Plaza Shopping Center. U.S. Route 460 borders the center on the west. It is divided into two northbound and two southbound lanes, each approximately ten and a half feet wide. Running north, the highway curves to the right as it reaches the southern entrance to the center. At the main entrance 350 feet to the north, traffic is controlled by traffic lights. From the stop line at the traffic lights, Route 460 curves slightly to the left as it passes an exit from the shopping center parking lot 300 feet farther north. The posted speed limit in the area is 35 miles per hour.

Two eyewitnesses testified for the plaintiff. Arthur Pulver stated that he was standing on the southeastern corner of the main shopping center entrance. As the traffic light turned to caution, he saw two cars stop in the right northbound lane. Starting to cross the street with the green light, Pulver looked south and saw a Cadillac "come flying up around that curve" at a speed of "at least 50." "[A]bout two and a half car lengths from the red light", the Cadillac "whipped . . . from the right lane over to the left lane in a manner that it made the tires holler" and "just sped right on through the light." To his right, Pulver saw the plaintiff's pickup at the northern exit "pulling out slow, just making a right-hand turn on 460." The front of the pickup was "[m]aybe a foot or two" onto the highway and "was just making the turn as the Cadillac came around the other cars and went through the red light." The Cadillac exhibited no brake light and "in fact, as he come through the light, it was like he put more gas to it because his tires were squealing." After running the red light, the Cadillac "stayed in the left lane". But as it entered the gradual left curve, it "started drifting over to the right and—wham—right into the side of the driver's side of the truck." The pickup "was in the right lane" and "[n]ever went over that white line in the middle of the road."

According to the investigating officer, Pulver had told him in an interview a day or two after the accident that the Cadillac "came out of the shopping center entrance or exit and accelerated . . . and

was going pretty good when the truck pulled out". But, in a second interview, Pulver said that the Cadillac "was coming through the light instead of coming out of the shopping center." On cross-examination, Pulver reaffirmed the account he had given on direct examination and could not remember having made the inconsistent statement to the officer.

Hugh Whitley, the other eyewitness, was driving a car following the plaintiff's pickup. Whitley testified that Parker stopped before he entered the highway. Stopping behind the plaintiff, Whitley "looked to the left and so did Mr. Parker because I saw him look." Cars were waiting at the red light. No traffic was approaching. The plaintiff "started to pull out and . . . his truck hesitated like." After the plaintiff "had pulled out into the road", Whitley "looked back the second time" and saw the Cadillac "about halfway from the stoplight". Continuing his turn, Parker "swung a little wide". Whitley could "[n]ot really" say where Parker's left front wheel was, but he "had almost straightened back up" and was "on the inside lane" when the Cadillac struck his left door. Whitley added that no traffic was obstructing the passing lane at that time.

The plaintiff testified that he stopped about two feet from the highway and looked to his left. Seeing cars stopped at the red light and no traffic moving in his direction, he turned right across the drainage "dip" at the edge of the road. He continued to look to his left until his 14-foot vehicle was "half on the highway". Parker then looked to his right as he shifted gears and continued his turn. He had traveled only a car length and a half from the exit and was "better than 90 percent straight" when the collision occurred; his average speed had been seven to eight miles per hour, and "[n]o part" of his pickup had entered the left lane. Parker never saw the Cadillac before it struck him.

The defendant's version contradicted the plaintiff's account. He testified that he stopped in the left lane at the red light "for a second or two" and, when the light "changed to green", proceeded in the left lane at a speed of 20 to 25 miles per hour. "[A]bout 20 feet from the north side of the exit", he saw the pickup "maybe 10 or 15 feet back from the highway." The pickup did not stop, he said, but "crossed over into the left-hand lane", "[r]un right into the right side of my car", and "I was hit before I could put on brakes."

The investigating officer's testimony concerning the physical evidence was illustrated with photographs taken shortly after the accident. The pickup came to rest on its left side facing east on the right

shoulder of the highway five feet from the concrete curb and approximately 50 feet north of the northern exit. The Cadillac was found upright facing southeast in the right lane with the left front wheel on the curb near the rear of the pickup. The impact had wrenched the driver's compartment and door forward and collapsed the hood and left fender of the pickup. Damage to the Cadillac extended from the front bumper along the right fender and doors to the rear fender.

The officer stated that debris from the vehicles was deposited "mostly in the right lane and some in the left—the edge of the left." He described three pressure tire marks which, the parties agree, were made after the collision. The marks originated near the extension of the north edge of the northern exit. The first commenced within three feet of the left side of the left lane and continued in a "sweeping" arc to the rear tires of the Cadillac. The second, beginning two to three feet to the left of the line dividing the two lanes, led to the right front tire of the Cadillac. The third began one foot to the left of the dividing line and terminated at a point near the curb in front of the Cadillac and behind the pickup. Pulver, who had observed the tire marks at the scene and examined the photographs at trial, testified that he was "positive" that all three marks had been made by the Cadillac as it "spinned broadside" following the collision. This was the only testimony attributing the third mark to either vehicle.

The defendant's theory of contributory negligence is that the plaintiff, without maintaining a proper lookout for traffic dangerously near, entered the highway and crossed into the left lane directly in the path of his car. The defendant emphasizes the plaintiff's testimony that, traveling at an average speed of seven to eight miles per hour, he moved seven feet onto the highway while looking to his left and, after looking to his right, another 14 feet before being struck. Contending that the plaintiff is bound by his own testimony and applying a mathematical formula, the defendant insists that it was physically impossible for the Cadillac to travel 300 feet from the traffic light while the pickup traveled 14 feet. Referring to Whitley's testimony that he saw the Cadillac when it was "about halfway from the stoplight", the defendant claims that his car could have been no more than 150 feet away when the plaintiff entered the highway. Hence, he concludes, the plaintiff "either did not look or did not see the [defendant's] vehicle when it was in plain view and in dangerous proximity to him."

■ A party litigant is generally bound by his own testimony. *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S.E. 652, 656 (1922). But there are exceptions to the general rule. "It does not apply to statements of opinion." *Baines* v. *Parker and Gladding*, 217 Va. 100, 104, 225 S.E.2d 403, 407 (1976). Nor does the rule apply to an estimate of speed. *Yates* v. *Potts*, 210 Va. 636, 639, 172 S.E.2d 784, 787 (1970). And "a witness to an automobile accident is not held to . . . mathematical certainty in giving an estimate of distance". *Kelley* v. *Henley*, 208 Va. 264, 269, 156 S.E.2d 618, 622 (1967).

The case at bar exemplifies the reason underlying the opinion exception to the *Massie* rule. Minor differences in estimates of speed and distance would undermine the conclusion the defendant draws from his mathematical formula. And the conclusion is contradicted by eyewitness testimony. Pulver said that the pickup already had entered the highway when "the Cadillac came around the other cars and went through the red light." When the plaintiff stopped in front of Whitley, Whitley saw no cars north of the traffic light; it was not until the plaintiff "had pulled out into the road" that Whitley saw the Cadillac. Looking to his left, the plaintiff saw no traffic moving in his direction, and looking to his right as he was obliged to do in completing his turn, he could not possibly see the Cadillac approaching from the rear.

We find nothing incredible in this testimony. In three separate instructions, the trial court defined the plaintiff's duty to maintain a reasonable lookout as he entered the highway. The jurors' verdict shows that they rejected the rigid mathematical computation urged by the defendant and found that the plaintiff had kept a proper lookout. We cannot say as a matter of law that their finding is not supported by the evidence.

■ Nevertheless, the defendant contends that the physical evidence proves the plaintiff was guilty of contributory negligence. Although he testified at trial that the plaintiff ran heedlessly into the right side of his car, the defendant now argues that the plaintiff negligently drove into the left lane in front of his car. The physical evidence, he says, overcomes all oral evidence to the contrary.

"[W]hen physical facts are relied upon to overcome oral testimony they must be established by evidence so clearly preponderating that the existence of such facts is unmistakable." *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 323, 130 S.E.2d 462, 466 (1963). Oral evidence is overcome only when "the physical facts are such as to

demonstrate that the oral evidence . . . is incredible". *Noland* v. *Fowler,* 179 Va. 19, 23, 18 S.E.2d 251, 253 (1942).

The photographs arguably permit an inference that the tire mark leading from the left lane to a point near the curb was made by the pickup. But such an inference is not an "unmistakable" physical fact. Indeed, other physical evidence raises a contrary inference. If, as the defendant asserts, the Cadillac was wholly in the left lane and the pickup partly in the right lane when they collided, debris from the two vehicles probably would have fallen across both lanes; but, as the investigating officer testified and as the photographs graphically confirm, most of the debris was deposited in the right lane and only a minor portion in the left lane just across the dividing line. Thus, the jury reasonably could have inferred from the physical evidence that the pickup was completely in the right lane when the vehicles collided.

Reinforcing this inference, the eyewitness testimony adduced by the plaintiff placed the point of impact in the right lane. When, as here, credible testimony is supported by an inference reasonably deducible from the physical evidence, a conflicting inference raised by the physical evidence does not overcome the oral evidence as a matter of law. Judging the credibility of the witnesses and weighing the evidence as a whole, the factfinders are free to choose among all reasonable inferences, although some inferences may be more probable than others. *Lane* v. *Scott,* 220 Va. 578, 582, 260 S.E.2d 238, 240 (1979). "[T]he trial judge [may not] substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury." *Commonwealth* v. *McNeely,* 204 Va. 218, 222, 129 S.E.2d 687, 690 (1963); *accord, Coleman* v. *Blankenship Oil Corp.,* 221 Va. 124, 129, 267 S.E.2d 143, 146 (1980); *Lane* v. *Scott, supra.*

We hold that the trial court erred in ruling as a matter of law that the plaintiff was guilty of contributory negligence. The judgment will be reversed, the jury's verdict will be reinstated, and final judgment will be entered here for the plaintiff.

*Reversed and final judgment.*