### Richmond

## MOSES M. EVANS

### v.

## LINWOOD F. BRILEY, ET AL.

April 24, 1981.

Record No. 790438.

Present: All the Justices.

*Christopher A. Meyer (James A. Eichner; Allen, Allen, Allen & Allen,* on briefs), for appellant.

*Mary Louise Kramer (Sands, Anderson, Marks & Miller,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

Moses M. Evans brought this action for damages against Linwood F. Briley[1] and James W. Harris for personal injuries alleged to have resulted from a collision between an automobile operated by Briley, in which Evans was riding as a passenger, and one operated by Harris. In a jury trial, at the conclusion of the presentation of evidence for Evans, the trial court granted the motions of the defendants to strike the evidence and entered summary judgment for Briley and Harris on January 9, 1979. We granted Evans an appeal limited to the question whether the trial court erred in striking his evidence as to Harris and entering summary judgment for that defendant.

The investigating officer, Ellis C. Yeager, of the Richmond Bureau of Police, testified that the accident occurred about 3:50 p.m. on January 9, 1978, at the intersection of 33rd and Q Streets in the City of Richmond. Q Street runs generally east-west, 33rd Street generally north-south. The speed limit was 25 miles per hour. Traffic on 33rd Street was controlled by two "YIELD" signs, one placed at the northwest corner of the intersection, and the other at the southeast corner. There was no obstruction to a driver's view of the signs. When Yeager arrived at the scene a few minutes after the accident, he found the Harris car on the southeast corner of the intersection resting against a telephone pole. This vehicle had knocked over the "YIELD" sign on the corner. The Briley car, as shown on a diagram of the scene made by Yeager and introduced in evidence, was facing north on 33rd Street south of Q Street.

---

[1] Briley was named in the motion for judgment as Linwood Bradley.

Both drivers and Evans gave Yeager their versions of the accident. Briley stated that he was driving south on 33rd Street, that he stopped at the intersection, looked in both directions and started across, that Harris was coming north on 33rd on Briley's side of the street making a left turn and then turned quickly back to his right, and that Briley's car struck Harris's and spun it counterclockwise. Evans gave the officer a similar account of the Harris car coming north on 33rd Street on the wrong side of the street, starting to make a left turn and then swerving back to the right. Harris, however, told Yeager that he was driving east on Q Street when Briley's vehicle came through the "YIELD" sign and struck his car, and that he speeded up, spun clockwise and hit the pole.

Yeager testified that there was damage to the left rear, left side and left front of the Harris car and "full-front damage" to the Briley vehicle. He identified the damage on photographs that were introduced in evidence. He also testified that tire marks extended in an arc clockwise from the center of "the street" to the rear of the Harris car.

Called by Evans as an adverse witness, Harris testified that he was driving east on Q Street and Briley was driving south on 33rd. Harris was familiar with the "YIELD" signs controlling 33rd Street traffic at the intersection because he had been traveling "that route for five or six years." He never saw the Briley car before the collision.

Briley, called as a witness for Evans, testified that he was driving south on 33rd and first saw Harris's car coming north on that street at 35 to 40 miles per hour about a block or a block and a half away. Briley said that when he proceeded into the intersection, after stopping at the "YIELD" sign and looking to left and right, the Harris car was half a car length or a car length away but coming into Briley's lane. Evans said, "What is this man doing?" as Harris turned left into Briley's car.

Evans testified that Briley drove south on 33rd Street and stopped at the "YIELD" sign at Q Street as the Harris car was coming north on 33rd Street. Briley started into the intersection, and Harris tried to turn left. According to Evans, the side of the Harris car struck the front of the Briley car. The Harris car was damaged from the "left side to the rear end." On cross-examination, Evans said that from his position in the passenger seat of the Briley car he could see everything that happened, that he first saw the Harris car approximately half a block away, and that Briley was already in the intersection when without warning the Harris car made a left turn and collided with the Briley automobile.

The trial court ruled that the physical facts in evidence showed clearly that the accident could not have occurred as Evans testified. Citing as authority *Holland* v. *Holland,* 217 Va. 874, 234 S.E.2d 65 (1977), the Court then granted the motions of both defendants to strike the plaintiff's evidence.

In *Holland,* a passenger riding in a car operated by her husband was injured when the vehicle collided with another. Suing her husband and the other driver, the wife was awarded a verdict and judgment against her husband. The clear and unequivocal testimony of the plaintiff absolved her husband of any act of negligence, although the evidence adduced on behalf of the other driver, in whose favor the jury returned a verdict, was to the contrary. Declining to permit the plaintiff to rely on evidence that was in irreconcilable conflict with her testimony, we reversed the judgment of the trial court and entered final judgment for the husband. To the same effect is *Baines* v. *Parker and Gladding,* 217 Va. 100, 225 S.E.2d 403 (1976).

Although the plaintiff's evidence in the present case absolved Briley of negligence and required, under *Holland* and *Baines,* that the trial court strike the evidence as to Briley, the evidence did not necessarily require the same ruling as to Harris. The evidence adduced by Evans, which we must view most favorably to him in considering the action of the trial court, purported to show that Briley was operating his automobile in a lawful manner south on 33rd Street in the Q Street intersection when Harris, driving north on 33rd Street, suddenly turned to his left and struck the Briley car. Under Evans's theory of the case, therefore, as developed by the evidence, the sole proximate cause of the accident was this negligent act of Harris's. Unless this evidence was inherently incredible as a matter of law, Evans was entitled to go to the jury under instructions presenting his theory.

Based upon the evidence that the Harris car was damaged on the left side, the trial court ruled that Evan's evidence that Harris caused the collision by turning to his left into Briley's car was unbelievable. When physical evidence demonstrates conclusively that the oral testimony upon which the plaintiff relies is incredible, it is proper for the trial court to remove the case from the jury. *Whittaker* v. *Calfee,* 214 Va. 301, 199 S.E.2d 525 (1973); *Talley* v. *Draper Construction Co.,* 210 Va. 618, 172 S.E.2d 763 (1970). However, there was evidence that Harris turned to his left and then back to his right just before the cars collided. This was the version given by both Evans and Briley to the investigating officer immediately after the accident. If true, it could account for the damage to the Harris car being only on the left side. It is not correct, as counsel for Harris argued before us, that

Evans testified that Harris made an "ordinary left turn" into the Briley car. The record shows that when the trial judge asked Evans if Harris made an "ordinary left turn" Evans merely replied, "He tried to make a left turn." Evans did not attempt to characterize the movement of the Harris vehicle.

█ The physical evidence, in our view, does not conclusively show that the accident could not have happened as described by the plaintiff's evidence. The photographs show damage to the left side of the Harris car. It is an issue of fact, however, whether the damage was caused by Briley driving into the car as Harris was moving east on Q Street, as Harris testified, or by Harris attempting to turn left and then turning right before impact as he drove north on 33rd Street, as Evans's evidence indicated. We cannot say as a matter of law that the evidence as to damage was inconsistent with Evans's theory and that Evan's evidence was inherently incredible. *See Motley* v. *Doe,* 210 Va. 428, 431, 171 S.E.2d 818, 821 (1970); *Parker* v. *Davis,* 221 Va. 299, 304-05, 269 S.E.2d 377, 380-81 (1980). Therefore, it is for a jury to determine whether the physical facts are consistent with Evans's evidence. The case turns upon the credibility of witnesses, a question that is uniquely appropriate for resolution by a jury. If the jury finds that Harris was driving east on Q Street, as he testified, Evans may not recover.[2] If the jury finds that Harris was driving north on 33rd Street and turned left into Briley's car, as Evans and Briley testified, Evans may recover. Upon retrial, the jury should be instructed in accordance with these two conflicting theories.

For the reasons assigned, we hold that the trial court erred in striking Evans's evidence and entering summary judgment for Harris. Accordingly, we will reverse the judgment and remand the case for a new trial as to Harris consistent with the views herein expressed.

*Reversed and remanded.*

---

[2] On brief, but not in oral argument before us, Evans contended that even if Harris's version of the accident was correct, he could still recover under the theory that Harris failed to keep a proper lookout. However, under the rationale of *Holland* and *Baines,* Evans may not rely upon evidence that is diametrically opposed to his own positive testimony. Having conceded that he was in a position to see and did see everything that happened, he must recover on his version or not at all.