# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Anesta R. Farrell

v.

James M. Wylie et al.

December 4, 1998

Case No. CH97-472

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this chancery suit, a 95-year-old woman seeks rescission of a deed of gift that she made to her nephew.

*Facts*

John D. Wylie, a Spotsylvania County resident, died on July 25, 1995. His wife and two brothers predeceased him. He had no children. Thus, he was survived by a sister, Anesta R. Farrell, of Bronx, New York, a nephew, and a niece.

His will, dated September 6, 1990, was probated on September 15, 1995, and the designated co-executrixes qualified to administer the estate.

Pertinent here, Farrell is a beneficiary under the terms of the will; the nephew is not.

Farrell attended her brother's funeral in Spotsylvania County. On the train ride back to New York, she was joined by the nephew, James M. Wylie.

Shortly thereafter, Wylie went to Farrell's home and offered to assist with her brother's estate in Virginia since her health condition would make it impossible for her to handle it. Farrell signed the papers given to her by Wylie and gave them back to him.

The documents that Farrell signed on August 19, 1995, consisted of (1) a general power of attorney, (2) a deed of gift, and (3) a "waiver." The power of attorney had been prepared by Wylie on a New York standard form. The deed

of gift and waiver had been prepared for Wylie by a Fredericksburg attorney and mailed to him in New York. By the terms of the deed of gift, Farrell transferred all of her interest in her brother's estate to Wylie and to her daughter, Esther Maquision. In the waiver, Farrell ceded to Wylie any right that she may have had to administer her brother's estate.

According to Farrell, Wylie also asked her to assist in paying attorney's fees associated with the administration of the estate. She complied and gave him $150.00 a month for more than a year for that purpose.

Farrell contends that she was not aware of the contents of the documents or their effect until it was called to her attention by others two years later. Wylie concedes that he never discussed the matter with Farrell again, he never told her what he did with the documents, and he never gave copies to her.

In any event, Farrell revoked the power of attorney on August 26, 1997, and filed this suit to rescind the deed on September 15, 1997.

Wylie claims that Farrell knew and understood what she was signing on August 19, 1995. In fact, he says, he had the papers prepared on the basis of their conversation during the train ride home from the funeral. According to Wylie, Farrell told him that she was getting old, that she did not want to handle her brother's estate,[1] and that she wanted her share of the estate to go in equal shares to him and to her daughter. Farrell emphatically denies any such conversation. As noted, she says that when Wylie showed up at her house on August 19, 1995, she was under the impression that all of the papers were related to Wylie's offer to assist her in administering her brother's estate.

At the time she executed the documents, Farrell was 92 years old. A college graduate, she was in reasonably good health, although she suffered from arthritis and a severe vision disability. She was not completely blind, but she could not read. In addition to her daughter, Farrell has a son, nine grandchildren, and several great-grandchildren.

Wylie is 60 years old. He spent much of his childhood in Farrell's home. Farrell paid his way to college. He, too, lives in New York.

### Nature of This Proceeding

In her bill of complaint, Farrell seeks to rescind the deed of gift on the basis of fraud.[2] She named Wylie as defendant, along with her daughter,

---

[1]  At the time, she did not know that her brother's will designated others to act as co-executrixes of his estate.

[2]  Alternatively, Farrell sought reformation of the deed of gift because of mutual mistake. The commissioner correctly found no mutual mistake, and no exception

Maquision, who is a grantee in the deed of gift, and the co-executrixes of her brother's estate.

Wylie responded, denying the allegations in the bill. The co-executrixes responded in support of Farrell's prayer for relief. Maquision filed no pleadings. However, she made a general appearance, testified on behalf of her mother, and stated her support for the relief sought in the bill.

The case was referred to a commissioner in chancery, who conducted an evidentiary hearing on June 8, 1998. He filed a ten-page report on August 17, 1998, recommending that the deed of gift be rescinded on the ground of fraud.

Wylie filed exceptions to the commissioner's report. Counsel argued the exceptions on November 16, 1998, and the court took the matter under advisement.

### Weight Given to Commissioner's Report

The report of a commissioner in chancery is not given the same weight as a jury verdict. Virginia Code § 8.01-610. Nevertheless, it is entitled to respect and great weight; and where, as here, the evidence has been taken in the commissioner's presence, the report should not be disturbed unless its conclusions are clearly at variance with the evidence, or correct principles of law have not been applied. *Higgins v. Higgins*, 205 Va. 324 (1964). It is said that the report comes to the court armed with a presumption of correctness, especially as to factual findings upon conflicting evidence. *Morris v. U.V.B.*, 237 Va. 331 (1989).

### Elements of Fraud

Actual fraud is a false representation of a material fact, intentionally and knowingly made, with the intent to mislead another person, which that person relies upon with the result that he or she is damaged by it. Constructive fraud differs from actual fraud in that the representation is not made with intent to mislead, but is made negligently, resulting in damage to the person relying on it. See 8B M.J., *Fraud and Deceit*, § 3. Actionable fraud may result from silence, concealment, or suppression of facts, as well as from affirmative representation. *Van Deusen v. Snead*, 247 Va. 324 (1994).

Fraud must be proven by the party asserting it by clear, cogent, and convincing evidence. *Winn v. Aleda Construction Co.*, 227 Va. 304 (1984). While the burden does not shift because of the relationship between the

---

was taken to that finding. None of the parties have argued that point further.

parties, it is clear that courts find it less difficult to determine that fraud has been sufficiently proven when the transaction involves dealings between kindred or persons standing in confidential relations to one another. See *Creasy v. Henderson*, 210 Va. 744 (1970); 8B M.J., *Fraud and Deceit*, § 56. Further, there are certain circumstances that mark a transaction with badges, or indicia, of fraud. If enough of these badges or indicia appear, unexplained, fraudulent intent may be inferred. These badges of fraud include close relationship between the parties, breach of trust, undue influence, and gross inadequacy of consideration, among others. See *Sadler v. Marsden*, 160 Va. 392 (1933). Relationship is not itself a badge of fraud, but it does call for closer scrutiny than is usually necessary in dealings between strangers. *Francisco v. Neal*, 167 Va. 13 (1936). This is so because secret trusts are more likely to exist between near relations than with strangers. *Saunders v. Parrish*, 86 Va. 592 (1890); also see *Dodd v. Lafon*, 153 Va. 110 (1929).

Here, the commissioner found that Farrell and Wylie had a close relationship. "Wylie was practically raised by Farrell, and she trusted him," the commissioner observed. Additionally, the commissioner found a special confidential relationship in that Wylie had offered to act on Farrell's behalf concerning her interest in her brother's estate, and Farrell had accepted the offer. Finally, the commissioner noted Farrell's poor eyesight that limited her abilities to read the papers and look after her affairs.

At bottom, proof in this case is determined by the credibility of the witnesses. If one accepts Farrell's version, she never had a conversation with Wylie about giving him a portion of her interest in her brother's estate; Wylie showed up at her house armed with prepared documents which she thought were designed to assist Wylie in administering her brother's estate *on her behalf*; she could not read the papers, and Wylie knew that; she did not ask Wylie or the notary to read the papers to her because she trusted Wylie implicitly; and she gave Wylie money to employ an attorney in Fredericksburg to look after *her* interest in her brother's estate. On the other hand, if one believes Wylie, he had the papers prepared at the behest of Farrell, based on a conversation that they had on the train; when he took papers to her house for execution, Farrell read them and understood them, including the deed of gift; Farrell never gave him any money toward attorney's fees; and Wylie intended to handle his uncle's estate in order to look after his own interests, *not* Farrell's.

Pointedly, the commissioner found "from the parties' demeanor and other circumstances of the case that the testimony of Farrell is more credible than the testimony of Wylie." When evidence is taken in the presence of a commissioner, the court should give great deference to his determination of

credibility of witnesses, unless the record plainly does not support his assessment.

The court has reviewed the record, including the 182-page transcript of testimony taken before the commissioner and finds nothing to suggest that the commissioner's determination regarding the witnesses' credibility is wrong. Further, the court finds that the commissioner properly weighed the other evidence adduced and applied correct principles of law.

For these reasons, the court confirms and approves the commissioner's report in all respects and will decree rescission of the deed of gift on the ground that it is void for fraud.