## Richmond

Lois Baines v. Phyllis B. Parker and Garland J. Gladding.

June 11, 1976.

Record No. 750759.

Present, All the Justices.

*Harvey E. White, Jr.; Robert D. Lucas, Jr. (White, Reynolds, Smith, Winters & Lucas*, on brief), for plaintiff in error.

*Morris H. Fine; John F. Rixey (Fine, Fine, Legum & Fine; Rixey and Heilig*, on briefs), for defendants in error.

Poff, J., delivered the opinion of the court.

Phyllis B. Parker, a passenger in an automobile driven by Lois Baines, was injured in a collision with a tractor-trailer truck owned by Garland J. Gladding and driven by his employee, Floyd S. Taylor. Parker filed a motion for judgment against Baines, Gladding, and Taylor seeking damages in the sum of $100,000. Gladding cross-claimed against Baines for property damages and loss of profits. Baines cross-claimed against Taylor and Gladding for damages for personal injuries. The jury returned a verdict in favor of Parker against Baines, only, in the sum of $25,000; a verdict in favor of Gladding against Baines in the sum of $6,567.18; and a verdict against Baines on her cross-claim. We granted Baines a writ of error to the judgment entered March 7, 1975, insofar as it confirmed the verdicts awarding damages to Parker and Gladding. Taylor is not a party to the appeal.

Near dusk on the afternoon of January 4, 1974, a rainy, foggy day, Parker and her daughter were riding as passengers on the front seat of an automobile rented by Parker and driven by Baines, her mother-in-law. Planning to travel from Norfolk to Southwest Virginia, Baines inadvertently entered the Chesapeake Bay Bridge-Tunnel complex. Leaving the toll gate behind a camper-trailer, she travelled north through a tunnel and onto a bridge at a speed of 40 to 45 m.p.h. Called by Parker as an adverse witness, Baines testified that the truck driven by Taylor "was behind me and he was racing his motor as though he wanted to pass me or wanted me to get out of his way" and that "he was so close, I couldn't see his lights." As the line of traffic approached a stalled vehicle, Baines saw the camper, then about two car lengths ahead, slowing down, applied her own brakes, and reduced her speed to 25 to 30 m.p.h. As she was slowing, she was "bumped" on the left rear fender or bumper which, she said, "knocked me out of control". Her car veered into the left lane where it was struck on its left side by the front of the truck.

Taylor, also called by Parker as an adverse witness, testified that, after leaving the toll gate and passing another large truck, he returned to the right lane behind Baines; that as the distance between them began to close, although he failed to sound his horn, he actuated his turn signals to indicate his intention to pass, accelerated to 40 to 45 m.p.h., and moved into the passing lane; and that when "I got my front bumper almost to her back bumper . . . she came almost sideways in the left lane, and I struck her right between the doors."

The testimony of Jack Wilson, an officer assisting at the scene of

the stalled vehicle, substantially corroborated Taylor's version of the accident.

James Briley, a passenger in a car following Taylor, testified that "[t]he truck went on into the southbound lane. It looked like it was trying to get back over into the northbound lane when it struck Mrs. Baines—struck the left quarter panel, and Mrs. Baines' car slid around and it hit it in the side."

Parker's testimony is crucial to the principal question involved on this appeal, and we quote pertinent excerpts from the record:

"Q. Now, when you passed through the first tunnel, were you aware of this truck?

"A. Yes, sir.

"Q. Can you tell us how you were aware of it?

"A. Because me and my daughter were watching him through the back window, and he was going much too fast. He was right on our bumper all the way.

"Q. When you say you watched through the window, how did you do that?

"A. I turned around and watched him, because we was all so scared and nervous.

"Q. How close was he to you?

"A. I would say not less than 10 or 12 feet, at the most. Maybe 15, and probably closer than that.

"Q. How long a period of time and distance did he continue at this distance from you?

"A. He followed us all the way through the tunnel right on the bumper. And then I guess about a mile—maybe little more than a mile—after we got on to the bridge, and there was a camper in front of us, and he put on his brake lights and then—

"Q. Let's stop right there. How fast, after you passed through the tunnel, was Mrs. Baines going?

"A. I guess about 40. Between 40, 45 miles an hour.

. . .

"Q. Tell us, in your own words, what occurred then?

"A. Well, when the camper in front of us started putting on his brakes, my mother-in-law started putting on her brakes to slow down, and that's when I felt the first bump. It wasn't so hard. But I think I said something like, 'My God, Mom, he's hit us.' My daughter was screaming all the time, 'He's going to hit us. I know he's going to hit us.' She was just terrified.

"Q. What occurred in the car when you were riding—

"A. When he hit us the first time, it made my mother-in-law lose control of the car, and just skidded sideways. Evidently, he had cut out in the passing lane, and that's when he caught us broadside.

. . .

"Q. Was this slowing-down action a gradual action or was it an abrupt action?

"A. No, it was gradual.

"Q. And at the time that your car began to slow down, was Mrs. Baines looking straight ahead down the road?

"A. Yes, sir.

. . .

"Q. Now at the time Mrs. Baines began to slow down and the car you were riding in began to slow down, was it wholly within the right-hand lane?

"A. Yes, sir.

"Q. And as it was slowing down, at any time did it drift over into the passing lane or left lane?

"A. Not until we were bumped in the back and she lost control of it.

"Q. What was this bump? Could you describe—did you hear the bump?

"A. I heard it and felt it, and then we started skidding and I said, 'Oh, my God, Mom, we've been hit.' And by that time he had hit us broadside again. All I could think about was going into the water and all of us being drownded.

"Q. Did the car begin to turn sideways after that bump?

"A. Yes. After the bump, it skidded like it was making a sharp turn. But she didn't turn it herself. I guess she just lost control of it. . . .

. . .

"Q. To be very fair and honest, do you know what it was that bumped you?

"A. Yes, I'm sure it was the truck that bumped us.

"Q. And it bumped you in the rear?

"A. It bumped us in the rear on the side and caused the car to skid, and then he hit us broadside.

. . .

"Q. Would it be on the rear bumper, or would it be on the side of the car?

"A. Possibly the bumper or the side.

"Q. Do you know?

"A. No, I don't for certain."

Baines moved to strike Parker's evidence against her and to set aside Parker's verdict against her on the ground that Parker's case could not "rise higher than her own testimony." Finding that "there was no evidence given by . . . Parker to indicate that she actually saw the truck hit the rear end of the Baines' vehicle", the trial court overruled the motions.

Challenging this ruling on appeal, Baines relies upon the doctrine of *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652 (1922). There, we said:

"As a general rule when two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him. . . . This is not true, however, as to the testimony which he gives himself. No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified." 134 Va. at 462, 114 S.E. at 656.

The *Massie* doctrine is not to be read as a rule of thumb, categorical, absolute, and universally applicable. By definition, it applies only to "statements of fact" made by the litigant, to statements of facts "within his own knowledge", and to "the necessary inferences therefrom".

It does not apply to statements of opinion. Thus, a litigant who estimated his speed at "between 40 and 50" was not bound by his highest estimate. *Yates* v. *Potts*, 210 Va. 636, 639, 172 S.E.2d 784, 787 (1970).

It does not apply to statements made by a litigant concerning matters outside his realm of knowledge. A guest passenger who had never driven an automobile and was riding on the back seat of a car beside the man she later married was not bound by a statement that the host driver "didn't seem to be driving reckless in any way, as far as I'm concerned." *Saunders and Rittenhouse* v. *Bulluck*, 208 Va. 551, 554, 159 S.E.2d 820, 823 (1968).

Nor does the rule in *Massie* apply to an adverse statement standing in isolation from the litigant's testimony as a whole.

"A damaging statement made in one part of his testimony must be considered in the light of an explanation of such statement made in a later part of his testimony. . . . And it is generally for the jury to determine whether it will accept such explanation or clarification." (Citations omitted). *VEPCO* v. *Mabin*, 203 Va. 490, 494, 125 S.E.2d 145, 148 (1962).

Yet, while the rule in *Massie* has been explicated and refined, it has not been overruled or consumed by qualification or exception. Indeed, it has only been strengthened and validated by the gloss put upon it. The rule rests upon the sound premise that a man should not be permitted to profit at another's expense by contradicting his own sworn statements concerning facts within his own knowledge. Such statements, when unequivocal and against his own interest, are judicial admissions, and unless they are explained or clarified elsewhere in his testimony, he cannot disown them and adopt contrary statements made by others.

Taylor's testimony, supported by that of Wilson, tends to show culpable negligence on the part of Baines. On brief, Parker argues that she is entitled to the benefit of this evidence, even if it is inconsistent with her own statements, because her own testimony was "unclear, uncertain, ambiguous and in some instances, contradictory." She contends that, because she testified that she did not see the truck "bump" Baines' car and was uncertain whether the truck hit the rear fender or bumper, her testimony was a statement of opinion concerning facts outside her realm of knowledge and that, under the exceptions to the *Massie* rule, she is not bound by *any* of her testimony.

Whether she was bound by this portion of her testimony is immaterial, for that portion was relevant only to her allegation that Taylor was guilty of culpable negligence. But the question before us is whether Parker was bound by her testimony concerning her allegation that Baines was guilty of culpable negligence.* To determine that question, we look to Parker's testimony pertinent to Baines' conduct. Parker stated that Baines was traveling at a lawful speed; that when the brakelights on the camper flashed, Baines applied her

---

* The parties agree that Parker was not a guest passenger subject to the gross negligence rule prevailing on the date of the accident. *See* Code § 8-646.1 (Repl. Vol. 1957); amended Ch. 551, Acts of Assembly 1974.

brakes and gradually reduced her speed; that Baines was looking straight ahead; that the car was in its proper lane and did not drift into the passing lane; and that until the moment she heard and felt the "bump", Baines did not lose control of her car. We find nothing unclear, equivocal, or contradictory in this portion of Parker's testimony. Her statements were not statements of opinion but were statements of facts, facts observed from her vantage point on the front seat near the driver. Not one of Parker's statements shows a want of due care on the part of Baines; indeed, read as a whole, Parker's testimony completely absolves Baines of all negligence.

Such was not the case in *Bond* v. *Joyner*, 205 Va. 292, 136 S.E.2d 903 (1964), on which Parker relies. There, determination of the host driver's negligence turned upon the question whether he had crossed the center line of the street when struck by an oncoming truck turning left at an intersection. Noting that the guest passenger's "attention was diverted away from the street" and that her testimony was "silent as to whether or not [the host driver] crossed the center line of the street", 205 Va. at 295, 136 S.E.2d at 905, we invoked an exception to the rule in *Massie* and held that the guest passenger was not bound by her testimony that her host had been driving "in a proper and normal manner during the evening", 205 Va. at 294, 136 S.E.2d at 905. Here, Parker's testimony shows that her attention was focused upon Baines' operation of the automobile to the moment of the collision, and her statements with respect thereto were full and complete.

Applying the rule in *Massie*, we hold that Parker's testimony, insofar as it related to Baines' conduct, was an unequivocal statement concerning facts within her own knowledge; that those facts absolved Baines of negligence; that Parker's case cannot "be made stronger than [she] makes it"; and that Parker's judgment against Baines will be reversed.

We turn now to two issues raised by Baines' assignments of error to the judgment in favor of Gladding.

First, Baines argues that Taylor, Gladding's agent, was guilty of contributory negligence as a matter of law; that the trial court erred in ruling otherwise; and that this Court should correct the error and reverse the judgment. As part of this argument, Baines says that Taylor "did not blow his horn as required by statute . . . and, therefore, was negligent as a matter of law". Former Code § 46-225, the predecessor to Code § 46.1-209 (Repl. Vol. 1974), provided:

"The driver of an overtaking motor vehicle when travelling outside of a business or residence district shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction."

Referring to that statute, we held that "[t]he violation . . . was sufficient, standing alone, to convict [the driver] of negligence." *Simmons* v. *Craig*, 199 Va. 338, 344, 99 S.E.2d 641, 646 (1957). In 1964, the General Assembly added language which requires that the warning be given "when necessary to insure safe operation". Ch. 388, Acts of Assembly 1964. Hence, whether failure to give a warning under the circumstances disclosed by the evidence constituted a violation of the statute and, if so, whether such violation proximately contributed to the accident in a particular case are factual questions to be determined by the jury, unless the court can say that the evidence leaves no room for reasonable men to differ.

Here, as to these questions and as to other questions concerning due care on the part of Taylor, the evidence was in sharp conflict. We are of opinion that the trial court properly submitted these questions to the jury, and we cannot say as a matter of law that the jury's finding that Taylor was free of contributory negligence was contrary to the evidence.

■ Second, Baines challenges an instruction on damages granted at Gladding's request. The ground asserted at trial was that "[t]here was no probative evidence to support any loss of profits or loss of income by Gladding above and beyond an actual repair estimate." We find from the record before us that evidence of such losses was adduced; that Baines registered no objection thereto; and that Baines introduced no evidence contradicting the quantum of damages computed thereby. There was, therefore, evidence to support the trial court's action in granting the instruction.

The judgment confirming the verdict in favor of Gladding against Baines is affirmed. The judgment confirming the verdict in favor of Parker against Baines is reversed, and final judgment will be entered here in favor of Baines.

*Affirmed in part;*
*reversed in part;*
*and final judgment.*