## Richmond

### P. L. TRAVIS, JR. AND JACK D. LUDWIG, JR.

### v.

### ROBERT L. BULIFANT, JR. AND CENTRAL VALLEY CONSTRUCTION CO., INC.

Record No. 801355.

September 9, 1983.

Present: All the Justices.

*John D. Pearsall (McCaul, Grigsby and Pearsall*, on briefs), for appellants.
*James M. Minor, Jr. (Frederick T. Gray; Evelyn G. Tucker; Gary A. Baskin; Minor & Lemons, P.C.; Williams, Mullen, Christian, Pollard & Gray*, on briefs), for appellees.

PER CURIAM.

In this appeal from a decree dismissing a bill for accounting, the sole question is whether the complainants are barred from relief by the doctrine of *Massie v. Firmstone*, 134 Va. 450, 114 S.E. 652 (1922). Finding that they are, we affirm the decree.

Bulifant, Ludwig, and Travis formed a partnership, B.L.T. Associates, to build and operate the Chippenham Mall Shopping Center in Chesterfield County. Bulifant owned a 75% interest in the partnership and was to supervise construction. Travis, a real estate agent for 27 years, held a 12 ½% interest and was to handle the leasing and operation of the mall under a separate agency agreement. Ludwig, Travis' son-in-law, acquired a 12 ½% interest at Travis' invitation, but took no active part in the affairs of the

partnership. The partnership entered into three fixed-price contracts for the construction work with Central Valley Construction Co., Inc., a corporation controlled by Bulifant and his father.

Travis kept the partnership checkbook and made disbursements to Central Valley as construction progressed. The signatures of both Travis and Bulifant were required on the checks. The mall was completed by 1974, and in 1975 the partners resolved, by agreement, a dispute over the final balance due Central Valley.

In 1974, after completion of the mall, Travis employed George W. Riegel, a certified public accountant, to audit the partnership tax records for the 1973 tax year. Riegel found that Central Valley had been paid substantially more than the total sum due under the three fixed-price construction contracts. Bulifant admitted that Central Valley had been paid $347,237.13 more than the total due under the fixed-price contracts, but contended that those agreements had been entered into "for the express purpose of securing commitments from a lending institution." He contended that the true understanding of the parties was based on "an oral cost plus contract," *i.e.*, that Central Valley was to build the mall for cost plus a 5% profit, that it had done so, and that Travis had made final payment on that basis.

Faced with this anomaly, Riegel, who had done Travis' accounting work for many years, verified with Bulifant the amounts claimed by and paid to Central Valley and discussed the matter with Travis. Riegel testified that Travis told him the contracts had been "changed from a lump-sum to a cost-plus-5% contract." He then prepared a handwritten memorandum, addressed to his firm, which Travis signed. It recited the sums actually paid. The memorandum concluded:

> The contract was changed from a set figure to cost plus 5% profit.
>
> I understand the above and agree that you are to use the cost figure of $2,578,342.00 as the basis of improvements to Chippenham Mall Shopping Center performed by Central Valley Construction Co.
>
> Date *March 25,* 1974                    *P. L. Travis Jr.*

Riegel testified that Travis went over this memorandum with him before signing it because his handwriting was poor, and that Travis "verified" it.

Travis stated that he signed it because he thought it was necessary in order to support the partners' claims for depreciation on their tax returns. On cross-examination he testified:

> Q. Let me ask you this. Did you think you were giving the Internal Revenue Service false information when you signed that statement?
> A. No, sir, I was doing what I was requested to do.
> Q. So, that statement was intended to be a true statement, wasn't it?
> A. I wouldn't say that.
> Q. So, you are telling me on the one hand that you didn't intend to give the IRS false information, and on the other hand you wouldn't say that it was a true statement, is that what you are saying?
> A. I wouldn't say either one.

The court impanelled a jury pursuant to Code § 8.01-336E, and submitted to it, as an issue out of chancery, the question whether the true agreement between the parties had been the fixed-price contracts, as Travis and Ludwig contended, or an oral cost plus 5% contract, as Bulifant contended. After hearing the evidence, the jury returned an advisory verdict which found that the true agreement consisted of "three lump sum contracts" plus certain "extras," overtime allowances, and additional work. Bulifant moved the court to reject the verdict on the ground that Travis' testimony, coupled with the memorandum of March 25, 1974, bound the complainants and foreclosed their right to prevail.

The court held that the complainants, as a matter of law, were bound by their own testimony under the doctrine of *Massie* v. *Firmstone*, declined to accept the advisory verdict, and entered a decree dismissing the bill for accounting.

No rule is more firmly established in Virginia than that of *Massie* v. *Firmstone*. It has been cited, followed, distinguished, or. explained in over forty cases since it was handed down sixty years ago. It was expressed as follows:

> As a general rule when two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him. In such a situation he would be entitled to have the jury instructed upon his conten-

tion, or if there were a demurrer to the evidence, the facts would have to be regarded as established in accordance with the testimony most favorable to him. This is not true, however, as to the testimony which he gives himself. No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified.

*Id.*, 134 Va. at 462, 114 S.E. at 656. The rule does not apply to a party's mere estimates of fact, such as those relating to speed, *Yates* v. *Potts*, 210 Va. 636, 639, 172 S.E.2d 784, 787 (1970), and distance, *Kelley* v. *Henley*, 208 Va. 264, 269-70, 156 S.E.2d 618, 622 (1967), or to statements of opinion, *Ford Motor Co.* v. *Bartholomew*, 224 Va. 421, 431, 297 S.E.2d 675, 680 (1982), *Baines* v. *Parker and Gladding*, 217 Va. 100, 104, 225 S.E.2d 403, 407 (1976), matters outside the realm of the party's knowledge, *Saunders and Rittenhouse* v. *Bulluck*, 208 Va. 551, 553, 159 S.E.2d 820, 823 (1968), and adverse statements standing in isolation from a party's testimony as a whole, *VEPCO* v. *Mabin*, 203 Va. 490, 494, 125 S.E.2d 145, 148 (1962). But as we said in *Baines*, the rule has not been consumed by exceptions; rather, it has been strengthened and validated by the gloss put upon it. 217 Va. at 105, 225 S.E.2d at 407.

The facts in evidence here bear a certain similarity to those in *Massie* itself. Massie was a real estate agent who sued Firmstone, a landowner, for commissions. Massie had no listing agreement, but introduced a prospective purchaser to the owner. Massie's client reached an oral agreement with the owner, which the owner later repudiated. Massie's contention that he was due a commission was contradicted by a series of letters he had written to the owner, clearly acknowledging his understanding that he would earn a commission only in the event of a consummated sale. Further, his testimony at trial made it plain that he had no listing contract and that no written contract of sale was ever executed. We held that he was estopped by his testimony as a whole, taken with his correspondence, to contend as he did.

Here, Travis was similarly estopped by his testimony, taken together with his written memorandum of March 25, 1974, to con-

tend that the contracts had not been "changed from a set figure to cost plus 5% profit," in the words of his memorandum. He made all of the construction payments to Central Valley, which amounted to $347,237.13 more than the sum due under the fixed-price contracts. The payments were justified only on the "cost-plus" basis. He acquiesced in a settlement with Bulifant as to the final balance due. He participated in assurances to the Internal Revenue Service that the sums actually paid were in accordance with the true agreement between the parties, notwithstanding their written contracts.

Ludwig gave no conflicting testimony. He stated that he was a trainer of thoroughbred racehorses, that he had been out of the state a great deal, that his role was only that of an investor, that he took no active part in the partnership, that he relied on Travis to protect his interests, and that he authorized Travis to act for him in his absence. His testimony does nothing to take the complainants out of the rule.

The trial court correctly held that the rule of *Massie* v. *Firmstone* barred the complainants from relying upon the original, written, fixed-price contracts and, therefore, properly rejected the advisory verdict. Accordingly, the decree appealed from will be

*Affirmed.*