COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Causey and White
Argued by videoconference

RONALD VILLARROEL

v.      Record No. 1572-24-4

RAILING SYSTEMS, LLC

MEMORANDUM OPINION* BY
JUDGE KIMBERLEY SLAYTON WHITE
FEBRUARY 3, 2026

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Tara L. Umbrino (Jennifer Porter; TLT Legal Services, PLLC;
Jennifer Porter Law, PLLC, on briefs), for appellant.

Nicholas J. Phillips (Thomas, Thomas & Hafer, LLP, on brief), for
appellee.

Ronald Villarroel appeals the circuit court's judgment to sustain Railing Systems, LLC's

(Railing Systems) plea in bar to his personal injury complaint. The circuit court determined that

the Workers' Compensation Act (Act), Code §§ 65.2-300 through -307, precluded Villarroel's

claim because Railing Systems and Villarroel were statutory co-employees of third-party

defendants BCN Design Build, LLC and BCN Enterprises, LLC (collectively BCN).[1] Finding

no error, we affirm.

BACKGROUND

Villarroel worked at a residential construction project in Arlington in December 2021.

While working, he stepped on a window well egress grate and sustained serious injuries.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] BCN Enterprises, LLC oversees construction of projects, and BCN Design Build, LLC is a licensed general contractor.

According to Villarroel, the grate gave way, causing him to fall down the window well. Villarroel sued Railing Systems, arguing that it created a dangerous condition by failing to properly install the grate.[2] Villarroel's complaint alleged four counts: (1) creation of a dangerous condition; (2) failure to maintain; (3) failure to warn; and (4) negligent construction.

Railing Systems moved to file a third-party complaint for indemnification and contribution against BCN. Over Villarroel's objection, the circuit court granted the motion. According to the third-party complaint, BCN provided installation instructions for the grate; Railing Systems fabricated and installed the grate as specified and required by BCN; BCN oversaw and controlled the construction project and construction safety; and BCN hired Villarroel's company and directed Villarroel's work.

Railing Systems then filed a plea in bar, contending that Railing Systems and Villarroel were both statutory employees of BCN under the Act, Code §§ 65.2-300 through -307. At the plea in bar hearing, testimony indicated that BCN was the general contractor for the construction project, and BCN's contract required it to install the grate and complete the punchout work. BCN subcontracted with Railing Systems to install the grate. BCN subcontracted with Villarroel's employer, Pristine Home Services (Pristine), to complete the punchout work, and Villarroel performed Pristine's work. Punchout work included details like installing doorknobs or shower rods and applying touchup paint. BCN paid both Railing Systems and Pristine to work on the project.

Railing Systems' managing member and corporate designee, Mary Skelley, testified that she field-measured the window-well opening for the grate, which had a ladder and a hatch door.

---

[2] Villarroel had already "filed a suit against BCN in Richmond City Circuit Court." However, based on the record, the case was dismissed with prejudice "upon agreement of the parties." There is nothing in the record indicating any further action by Villarroel against BCN directly.

Then Railing Systems ordered the raw materials, cut them to the measurements taken, welded them together, and primed them with a rustproof coating. As a non-expert witness, Skelley testified that cutting and welding required specialized equipment and skills that she thought were generally outside the skill set of an average general contractor.[3] She added that Railing Systems installed the grate at the property by drilling holes to install mounting brackets for the ladder, bolting the brackets to the foundation or wall, bolting shelf angles, and mounting the grate on the shelf angle.

From the evidence at the plea in bar hearing, the circuit court found among other things that: (a) BCN contracted to build a residential dwelling at the property; (b) BCN engaged various subcontractors to perform its contractual obligations, and BCN did not maintain employees to perform the construction; (c) BCN subcontracted with Pristine, and Pristine performed BCN's trade; (d) Pristine employed Villarroel, who performed Pristine's trade; (e) BCN subcontracted with Railing Systems to fabricate and install the grate; (f) Railing Systems fabricated and installed the grate "based on its own pre-inspection of the window well area"; and (g) Villarroel fell through the grate's window well while he worked. The circuit court found that Railing Systems was "not a delivery service of material"; rather, it installed the grate. Railing Systems' installation of the grate was necessary to fulfill BCN's contractual obligation, and it therefore constituted the trade, business, or occupation of BCN.

The circuit court considered Skelley's lay testimony that welding was outside the skill set of an average general contractor to be only "an opinion" without authority or expert support. The circuit court found Skelley's testimony unconvincing and unsupported by authority. The circuit court stated: "There's nothing that says a general contractor can't perform welding.

_____

[3] Asked whether "for the average general contractor, the ironwork and welding work that you described for the Court is outside of the skill set of a general contractor," Skelley answered, "Generally, yes."

- 3 -

There's no statutory provision. There's no ordinance against it. The—you know, this is a burden that the plaintiff assumed. And this Court is not persuaded."

The circuit court held that the Act applied because Villarroel and Railing Systems were statutory co-employees, and BCN was the statutory employer. Finding that the Act provided the exclusive remedy for Villarroel's claim, the circuit court sustained the plea in bar and dismissed the complaint with prejudice. Villarroel appeals, arguing that the circuit court misapplied the Act, misapplied the burden of proof, and disregarded Skelley's testimony.

ANALYSIS

When an appellate court reviews a ruling on a plea in bar on which the parties have presented evidence "ore tenus, the circuit court's factual findings 'are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). To the extent the review rests on legal questions, including statutory construction, we review de novo. *Id.*

There are two main ways in which a court can establish evidentiary support for a plea in bar: "based on a discrete body of facts identified by the parties through their pleadings, or developed through the presentation of evidence supporting or opposing the plea." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). On the latter, "if the facts are disputed and no demand for a jury is made, the 'whole matter of law and fact' may be decided by the court." *Ferguson Enters., Inc. v. F.H. Furr Plumbing, Heating & Air Conditioning, Inc.*, 297 Va. 539, 549 (2019) (quoting *Hawthorne*, 279 Va. at 578).

To enable parties to present supporting evidence for a plea in bar, a trial court may hold an evidentiary hearing and this Court may rely on that evidence even in the absence of any other evidence. *See Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022). Indeed,

- 4 -

precedent indicates that in some circumstances the trial court must hold an evidentiary hearing to establish evidentiary support when presentation of evidence is necessary. *See Montalla, LLC v. Commonwealth*, 303 Va. 150, 173 (2024) ("In making this factual finding . . . the Court of Appeals strayed from its proper role . . . . [T]he circuit court conducted no evidentiary hearing on the Commonwealth's plea of accord and satisfaction, and thus, made no formal factual finding based on the evidence . . . ." (emphasis omitted)); *Kole v. City of Chesapeake*, 247 Va. 51, 57 (1994) ("We also conclude that the trial court erred in refusing to conduct an evidentiary hearing as requested by the [plaintiffs].").

This case is distinguishable from those in which the trial court failed to establish evidentiary support before ruling on a plea in bar. Here, there was an in-person evidentiary hearing. In the hearing, two witnesses, called by BCN and Railing Systems separately, testified as to the facts relating to BCN's contract to build the home, Villarroel's role as a subcontractor in that work, and Railing Systems' role as a subcontractor in that work. As noted above, the trial court made numerous findings of fact and law based on evidence from this hearing. Pertaining to evidentiary support specifically, it found that Railing Systems was contracted to fabricate and install the grate, that "Railing Systems was not a delivery service of material," that the installation was "part of the construction of the residential structure," and, thus, that "Virginia Code [§] 65.2-302(b) and [§] 65.2-307 apply." The evidentiary hearing and the findings of fact indicate that the trial court sought and found evidentiary support for the judgment on the plea in bar.

*I. The circuit court correctly applied the Workers' Compensation Bar.*

*a. The Scope of the Contracts*

Workers' compensation benefits generally provide the "exclusive remedy for a workplace injury falling within the Act." *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 469 (2022). Code § 65.2-307(A) prevents a covered employee or his administrator from seeking "any

other remedy against the employer or his fellow employees." *Jones v. Commonwealth*, 267 Va. 218, 222 (2004).

The Act applies when "an employment relationship of some kind" exists between the claimant and the defendant. *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 90 (2019). In addition to basic employer/employee relationships, the Act recognizes an additional "category of employment relationship called '[s]tatutory employer.'" *Id.* (citing Code § 65.2-302). These classifications of the employer-employee relationship—"true" and "statutory"—govern who is entitled to workers' compensation coverage and, conversely, who, because of a lack of coverage, is entitled to maintain an independent civil suit.[4] *See id.*; *accord Pfeifer v. Krauss Constr. Co. of Va., Inc.*, 262 Va. 262, 266-67 (2001) (citing Code § 65.2-307(A)). Like employers and employees in a true employment relationship, statutory employers and employees are bound by the exclusivity provisions of Code § 65.2-307(A), which limit a covered employee to the "rights and remedies" under the Act. *See Jones*, 267 Va. at 222.

Whether a particular person or entity was the statutory employer of an injured employee presents a "mixed question of law and fact that must be determined under the facts of each case." *Moore v. Va. Int'l Terminals, Inc.*, 283 Va. 232, 235 (2012) (quoting *Bosley v. Shepherd*, 262 Va. 641, 648 (2001)). As a result, the Court reviews the factual components of that determination for plain error and considers application of the relevant law de novo. *See Cornell*, 301 Va. at 349.

A company or individual may be a statutory employer of the employees of certain subcontractors. *See Jeffreys*, 297 Va. at 90-92 & 92 nn.3-4. Code § 65.2-302 provides that the person or business is liable for workers' compensation benefits as a statutory employer under

---

[4] If we were to follow the dissent's lead, the rule for statutory employment would be dramatically underinclusive. The dissent asserts that relevant to the analysis of this rule is the degree of supervision and control exercised over the task being performed – virtually the same test undertaken in reviewing a basic employer/employee relationship. Clearly, precedent dictates otherwise.

specified circumstances.  *See Princess Anne Builders, Inc. v. Faucette*, 37 Va. App. 102, 109-12 (2001).  Code § 65.2-302(A) and (B) set out two tests for coverage of an employee under the Act by a statutory employer.  *Id.* at 109-11 (citing *Cinnamon v. Int'l Bus. Machs. Corp.*, 238 Va. 471, 476 (1989)) (noting that subsection (C) augments those tests); *see Jeffreys*, 297 Va. at 90-92 & 92 nn.3-4.  Subsection (A) establishes the "normal-work test," and subsection (B), treated as an exception, sets out the "subcontracted-fraction test."  *Princess Anne Builders*, 37 Va. App. at 110-11 (quoting *Cinnamon*, 238 Va. at 476).  If *either* test applies, the worker is a statutory employee covered by the Act, preventing him from suing his statutory employer or any of his statutory co-employees.  *Jeffreys*, 297 Va. at 90-92; *Pfeifer*, 262 Va. at 266-67.

The normal-work test provides coverage under the Act to "all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work."  *Jeffreys*, 297 Va. at 92 n.5 (quoting *Cinnamon*, 238 Va. at 475 n.1).  So, "every such owner, or contractor, and subcontractor" who is higher in the chain above an employee is liable as a statutory employer for injury to the employee.  *See id.* (quoting *Cinnamon*, 238 Va. at 475 n.1).

The "subcontracted-fraction test" relates to determining statutory-employer status under Code § 65.2-302(B) and (C).  *Princess Anne Builders*, 37 Va. App. at 110.  When the owner's trade, occupation, or business is different from the general contractor's, courts look to see whether the work that caused the accident is "obviously a subcontracted fraction of [that] contract."  *Cinnamon*, 238 Va. at 476 (alteration in original).  If the subcontractor's work is a fraction of the general contractor's contract, then the general contractor "is the statutory employer of the injured worker, whether directly employed by the primary subcontractor or by a secondary subcontractor."  *Princess Anne Builders*, 37 Va. App. at 111.  For example, in *Princess Anne Builders*, the general contractor

was a statutory employer of the tree removal company because tree removal was a subcontracted-fraction of the main sales contract for the home. *Id.* at 112.

Here, BCN subcontracted a fraction of the construction project to both Pristine and Railing Systems. Pristine's punchout work and Railing Systems' installation of the grate were elements of the construction project that were critical to fulfilling BCN's contract. Both Railing Systems and Pristine, and their employees, undertook a portion of BCN's home-construction project, and therefore they were engaged in BCN's work.

The dissent makes much of the fact that the parties did not include the contract in the record. According to the dissent, Railing Systems "failed to meet its burden to show that . . . [the] subcontracted fraction test applied." The dissent supports this claim by asserting that "the contract was never produced or introduced into evidence," and consequently, "we do not know what was in it." Further, "[t]he circuit court received into evidence no document dictating the scope or contents of the contract."

Yet, in this case the content of the contract is an issue of fact that was resolved by the trial court. "[W]hen an issue is raised whether . . . other evidence of contents correctly reflects the contents, the issue is for the trier of fact to determine." Rule 2:1008. It is undisputed that BCN was under contract to complete a residential construction project and that both Villarroel's employer and Railing Systems were under contract with BCN. Here, the trial court took testimonial evidence as sufficient to establish the scope of BCN's construction contract as well. The testimony of BCN's owner, Brian Normile, indicates that BCN was under a "general contract for construction of a property" at the address and "was contracted to build this home." More explicitly, "[t]he work that Railing Systems completed for BCN Design Build was work that was required under BCN Design Build's contract to build the home." Counsel for Villarroel agreed that this last fact is

"undisputed."[5]  Accordingly, the subcontracted-fraction test is satisfied in this case.  *See Whalen v. Dean Steel Erection Co.*, 229 Va. 164, 169 (1985) (Act barred tort claim of subcontractor performing a fraction of the construction work for which general contractor had overall responsibility).

The dissent would have this Court serve as the factfinder in this case, when that is the job of the trial court and one already completed here.  "[T]he reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial."  *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 224 (2013)).  The argument presented by the dissent is that the record is incomplete in this case because, without the actual contract included, the trial court had insufficient evidence to determine the scope of the agreements between BCN, Railing Systems, and Villarroel (via Pristine).[6]  Yet, it is unclear what we, as an appellate court, would gain by having the written contract on the record without thereby playing the role of factfinder.  We rely on the undisputed facts of the record presented through witness testimony before the trial court.

According to the dissent we need the written contract because Railing Systems "failed to show the scope of the construction contract between BCN and Railing Systems."  This

---

[5] The following colloquy occurred between the trial court, counsel for BCN, and counsel for Villarroel:

> [Feinstein, counsel for BCN:] BCN Design Build was required to complete [the work done by Railing Systems and Pristine Home Services] under its contract to build the home.
> [Court:] Is that in dispute?
> [Porter, counsel for Villarroel:] That issue is not in dispute, your Honor.

[6] The dissent appears to draw from our Supreme Court's analysis in *Bosher v. Jamerson*, 207 Va. 539 (1966).  Contained in the *Bosher* record was the actual contract relied upon, apparently.  The dissent points to the *Bosher* Court's language that the case "relied solely on the parties' contract." *See id.* at 542-43.

misrepresents the record and obfuscates the issue on appeal. The facts in the record upon which we rely, none of which are plainly wrong or without evidentiary support, are sufficient for this Court to move on to answering the legal issues—whether Railing Systems and Villarroel were statutory co-employees of BCN. The trial court relied on testimony regarding the scope of both the BCN residential construction contract and BCN's contract with Railing Systems—the BCN contract required the work of both the subcontractors in question, and the Railing Systems contract included only work that was required for BCN to fulfill its residential construction contract. The dissent is incorrect, since Railing Systems provided enough factual information about the scope of the contract to decide on the subcontracted-fraction test.

As the facts on record are sufficient for the legal finding we advance here, requiring a contract can only be relevant if it's inclusion would raise new evidence that contradicts those established facts. But that is a factfinding power this Court is not entitled to exercise. The dissent again misconstrues this opinion, saying that "[t]he majority argues that we must ignore all that we do not know about the contract." To the contrary, this opinion asserts that we must *not* ignore all that we *do* know about the contract, especially when, as here, what we know is sufficient to form the basis of an answer to the legal question at hand.

Again, in requiring the actual contract the dissent can only be looking to find evidence that *contradicts* the undisputed facts found by the trial court. It is the trial court's responsibility and authority to weigh such evidence to determine the facts and our job to differ only where the findings are plainly wrong or without evidentiary support, which we do not see here.

The dissent essentially admits the foregoing point. According to the dissent "[p]arties need not present a physical copy of a contract in order for this Court to find sufficient evidence in the record. Witness testimony can suffice." But that witness testimony must show "whether the installation requirements fell into the subject matter of the contract." What is clearly established

- 10 -

in this case is that "[t]he work that Railing Systems completed for BCN Design Build was work that was required under BCN Design Build's contract to build the home." In other words, the installation completed for BCN Design Build "fell into the subject matter of the contract [to build the home]." The dissent hopes for evidence that BCN controlled, supervised, or oversaw the work by Railing Systems, but fails to establish that any of these features is necessary to meet the subcontracted-fraction test.

Finally, the dissent cites several Supreme Court cases purporting to show that "our Supreme Court has not settled for mere evidence of an agreement and instead has looked to the *terms* of the contract provided in evidence." We do not rely on "mere evidence of an agreement" or "the mere existence of an agreement," but rather the scope of the contract. None of the cited cases discuss the necessity of a contract on the record. More importantly, none of them stand for the proposition that submitting a contract to the record is necessary when testimony provides enough information to decide the legal question.[7] We agree that the contents and scope of the contract are relevant to the determination of the subcontracted-fraction test, and the testimony on record here is sufficient to conclude that Railing Systems' contract with BCN was a subcontracted fraction of BCN's contract to build a home.

### b. Mere Delivery

Villarroel's argument that Railing Systems merely delivered the grate is also unsupported by the evidence. The evidence showed that Railing Systems installed the grate by drilling, bolting,

---

[7] Indeed, except for one of the cases the dissent cites in the paragraph in question, none of them even mention whether there was a contract on record. *See Se. Tidewater Area Manpower Auth. v. Coley*, 221 Va. 859 (1981); *Cooke v. Skyline Swannanoa, Inc.*, 226 Va. 154 (1983); *Rodriguez v. Leesburg Bus. Park, LLC*, 287 Va. 187 (2014); *Napper v. ABM Janitorial Servs. - Mid Atl.*, 284 Va. 55 (2012); *Cinnamon*, 238 Va. 471. The only case that does mention it discusses a photocopy of the agreement to address an issue with the best evidence rule. *Carmody v. F.W. Woolworth Co.*, 234 Va. 198 (1987); *see also Myrick v. Commonwealth*, 13 Va. App. 333, 339 (1991) (quoting the relevant section of *Carmody* as instructive for a decision on the best evidence rule).

measuring, and mounting it. Thus, Railing Systems performed more than delivery, and the cases limited to delivery are inapposite. *See Hipp v. Sadler Materials Corp.*, 211 Va. 710, 711 (1971) (holding that Act did not apply because a concrete company was only required to deliver the concrete—not to spread or finish the concrete); *Burroughs v. Walmont, Inc.*, 210 Va. 98, 100 (1969) (stacking of sheetrock was not an act of construction, so it was not in the trade or business of the general contractor).

The dissent mischaracterizes our analysis on this point also, saying "case law does not *mandate* that a subcontractor show it is a delivery system to escape the normal-work or sub-contracted fraction tests." Neither do we mandate any such thing. However, *if* the plaintiff argues that the defendant's work falls under mere delivery, then the plaintiff *is* required to show that the defendant's work is mere delivery. Villarroel makes exactly that argument. Thus, it was necessary for this Court to address the argument, concluding Villarroel did not show that Railing Systems merely delivered the grate in question.

To be statutory co-employees, workers must have an employer or statutory employer in common somewhere in the chain of employment. *See Fowler v. Int'l Cleaning Servs.*, 260 Va. 421, 426, 428-29 (2000) (holding that a worker employed by an owner was a statutory fellow employee of a contractor engaged to perform work on the owner's premises). Here, BCN subcontracted and paid both Pristine and Railing Systems for work on the construction project, and Pristine paid its employee Villarroel to complete Pristine's work. Thus, Villarroel and Railing Systems were statutory co-employees "entitled to the exclusivity protections of the Act." *David White Crane Serv. v. Howell*, 282 Va. 323, 328 (2011).

*II. The circuit court did not shift the burden of proof for the plea in bar to Villarroel.*

"Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Yarborough*

*v. Commonwealth*, 217 Va. 971, 978 (1977). Under that standard, "we will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." *Id.* Reviewing courts consider the entire record in context. *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 217 (2023); *Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 n.11 (2018) (same).

Villarroel argues that the circuit court's statement from the bench that "this is a burden that the plaintiff assumed" shows misapplication of the overall burden of proof.[8] But in context, the statement's focus was that Villarroel failed to establish that Skelley knew welding was outside a general contractor's scope of work. Other evidence had suggested general contractors' work may include welding, and the circuit court was not persuaded that BCN could not perform welding. The isolated comment did not pertain to *all* the testimony and evidence, and it did not impact the trial court's conclusion. Rather, the circuit court's ruling, considered in its context, shows that the circuit court did not place the burden on Villarroel to prove that the Workers' Compensation Act did not bar Villarroel's personal injury complaint. Instead, Railing Systems met its burden to show that the subcontracted-fraction test applied and Villarroel and Railing Systems were statutory co-employees under the Act.

The dissent states that our analysis "focus[es] on isolated statements"—just what we have accused Villarroel of doing therein. The claim is that by making much of the idea that BCN "*could* weld," we have ignored the more important question of whether they "*do* weld." But this is irrelevant. Whether BCN could or does weld bears no importance for the question of whether Railing Systems carried out a sub-contracted fraction of BCN's work, even if it would bear some

_____

[8] Railing Systems was a third-party plaintiff to BCN, and Railing Systems had the burden of proof for its plea in bar. *See Baker v. Poolside*, 272 Va. 677, 688 (2006).

- 13 -

importance for the normal-work test. We have been clear that our decision here, as well as the decision of the trial court, is based on the former, not the latter.

The importance of whether BCN could or does weld is merely in reference to the burden of proof argument made by Villarroel. Since Villarroel argues that the trial court shifted the burden of proof, it is incumbent upon us to address the context of the statement he uses to make the argument. The context includes a discussion of whether a contractor's being able to perform work that Railing Systems performed affects the conclusion that Railing Systems was engaged in the normal work of BCN. Thus, not only is the dissent's analysis of our treatment of that statement yet another mischaracterization of our analysis, it is not pertinent to the substance of the analysis at all.

### III. The circuit court did not err in weighing Skelley's testimony.

We "view the facts in the light most favorable to the party prevailing before the trial court"—Railing Systems. *Bottoms v. Bottoms*, 249 Va. 410, 414 (1995). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Elliot v. Commonwealth*, 277 Va. 457, 462 (2009). "We give deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." *Id.* And where evidence is conflicting, "it is for the jury to say which witness . . . they will believe and what testimony they will accept." *Diggs v. Lail*, 201 Va. 871, 877 (1960).

Under the *Massie* doctrine, a litigant's "statements of fact and the necessary inferences therefrom are binding upon him." *Massie v. Firmstone*, 134 Va. 450, 462 (1922). The *Massie* doctrine "is not to be read as a rule of thumb, categorical, absolute, and universally applicable." *Baines v. Parker*, 217 Va. 100, 104 (1976). It "applies only to 'statements of fact' made by the litigant, to statements of facts 'within his own knowledge', and to 'the necessary inferences

- 14 -

therefrom.'" *Id.* The *Massie* doctrine "does not apply to a litigant's statement of opinion." *Beeton v. Beeton*, 263 Va. 329, 337 (2002).

Here, Skelley testified that she generally agreed that welding was outside of the skill set of an average general contractor. She offered this as a lay opinion, and there was no showing that she had personal knowledge of an average general contractor's work. Thus, the *Massie* doctrine does not apply. *See Beeton*, 263 Va. at 337 (*Massie* doctrine did not apply to statement of opinion). And even if Railing Systems' corporate designee's testimony would not have independently sufficed to show applicability of the Act, the circuit court was permitted to consider *all* the testimony and evidence. *Nat'l Union Fire Ins. Co. v. Bruce*, 208 Va. 595, 600 (1968). Here, there was sufficient record evidence overall to find the subcontracted-fraction test was met. Thus, we find no error in the circuit court's weighing of the evidence.

CONCLUSION

We hold that the circuit court did not err by granting Railing Systems' plea in bar. The record supports the determination that Villarroel was a statutory co-employee with Railing Systems and that his claim was consequently barred by the Workers' Compensation Act's exclusivity provisions. We therefore affirm the circuit court's dismissal of Villarroel's personal injury suit.

*Affirmed.*

Causey, J., dissenting.

Whether Railing Systems is the statutory employer of Mr. Villarroel presents a "mixed question of law and fact that must be determined under the facts of each case." *Moore v. Va. Int'l Terminals, Inc.*, 283 Va. 232, 235 (2012) (quoting *Bosley v. Shepherd*, 262 Va. 641, 648 (2001)). Here, both the circuit court and the majority incorrectly apply the facts of the present case to the law at hand.[9] Mr. Villarroel cannot be Railing Systems' statutory co-employee, as Railing Systems failed to meet its burden to show that either the normal-work or sub-contracted fraction test applied. *See Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 90-92 (2019).

Under the normal-work test, based on the evidence found by the circuit court, BCN and Railing Systems were not "engaged in any work that is a part of the trade, business or occupation of the original party who . . . contracts as contractor, to perform that work." *Id.* at 92 n.5 (quoting *Cinnamon v. Int'l Bus. Mach. Corp.,* 238 Va. 471, 475 n.1 (1989)). It is undisputed that, from the evidence at the plea in bar hearing, the circuit court found that, "based on its own pre-inspection of the window well area," Railing Systems ordered the raw materials, cut them to the measurements taken, welded them together, and primed them with a rustproof coating before installing the grate. Railing Systems then completed specialized, highly-technical installation work—work that was performed by certified welders who, using specialized equipment, drilled holes to install mounting brackets for the ladder, bolted the brackets to the foundation or wall, bolted shelf angles, and mounted the grate on the shelf angle. BCN could not have performed any of these tasks as part of its trade, business, or occupation, as BCN did not itself maintain employees. Even BCN's corporate designee, Mr. Normile, testified that "BCN wasn't hired to fabricate anything."

---

[9] The majority hides behind *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977), which notes the presumption that the law was correctly applied to the facts. However, this is a presumption that can be rebutted with "clear evidence to the contrary in the record," as is the case here.

- 16 -

Railing Systems never came under the control or supervision of BCN. In this way, BCN is different from the respondent-corporation in *Bosher v. Jamerson*, 207 Va. 539, 542-44 (1966), a case upon which Railing Systems relied to show that specialized subcontractors can be co-employees of general contractors. In *Bosher*, the subcontractor worked "as directed by the [general contractor's] supervisor." *Id.* at 542-43. The Court found that it was only *after* the subcontractor came under the *supervision* and *control* of the general contractor that it was performing work that was part of the trade, business, or occupation of the general contractor. *Id.* Here, there is no evidence in the record that BCN was actively supervising or controlling the installation of the custom ironwork. BCN itself maintained no employees; instead, it could be likened to a headhunter: it merely found subcontractors it could then employ to finish the component jobs. And even if it did have employees, unlike the general contractor's supervisors actively working alongside the subcontracted employees in *Bosher*, there is no evidence of a BCN supervisor on the jobsite directing the subcontractors' activities. *See also Bassett Furniture Indus., Inc. v. McReynolds*, 216 Va. 897, 900 (1976) (finding the injured worker was not a statutory co-employee because the general contractor "had no control over [the subcontractor's] employees and never required any 'specific changes'").

As a result, Railing Systems, as the movant on the plea in bar, did not present sufficient evidence to show that manufacturing and fabricating custom-fit ironwork is part of the trade, business, or occupation of BCN. *See Cornell v. Benedict*, 301 Va. 342, 349 (2022) (noting the movant bears the burden of proof on a plea in bar heard ore tenus).

Under the sub-contracted fraction test, likewise, there is no evidence that Villarroel and Railing Systems are co-employees. Because Railing Systems' trade, occupation, or business is different from BCN's, we must look to see whether the work that caused the accident is "obviously a subcontracted fraction of [the parties'] contract." *Cinnamon*, 238 Va. at 476. If Railing Systems'

work is a sub-contracted fraction of BCN's contract, then BCN "is the statutory employer of the injured worker, whether directly employed by the primary subcontractor or by a secondary subcontractor." *Princess Anne Builders, Inc. v. Faucette*, 37 Va. App. 102, 111 (2001). In *Bosher*, where they found that the general contractor was the statutory employer of the subcontractor, the Court relied solely on the parties' contract—that was presented as evidence, unlike the case at bar— which stipulated that the subcontractor was "obligated" to perform "in such [a] manner as directed by [the general contractor]" and its subcontractors were instructed to perform their duties "as directed by the [general contractor's] supervisor." 207 Va. at 542-43. Likewise, in *Whalen v. Dean Steel Erection Co.*, 229 Va. 164 (1985), upon which the majority relies, there was a subcontract presented into evidence which provided that the subcontractor was to do "a complete job of steel erection." *Id.* at 166 (quoting contract language).

Here, the majority claims that "Pristine's punchout work and Railing Systems' installation of the grate were elements of the construction project that were critical to fulfilling BCN's contract." The majority needlessly spills much ink noting that witness testimony can and did establish the existence of a contract. Agreed, there is no dispute that a contract existed. Both parties acknowledged that there *was* a contract; however, the contract was never produced or introduced into evidence. Herein lies the problem: we do not know what was in it.

The majority misunderstands the arguments made in this dissent. Parties need not present a physical copy of a contract in order for this Court to find sufficient evidence in the record. Witness testimony can suffice. However, that testimony should include the performance required by both parties to, in fact, show whether one party's actions are indeed a sub-contracted fraction of the other's. Noting only that there was a contract for certain subject matter—here, to build a home—is not enough to show the terms of that contract, specifically whether the installation requirements fell into the subject matter of the contract. Here, all we know is that

BCN contracted with Railing Systems for custom ironwork.  We do not know whether Railing Systems' installation of that ironwork was indeed a sub-contracted fraction of the main contract with BCN because we do not know the price term, the performance terms—including method of payment, whether BCN was supposed to oversee that installation, or whether they were to supervise or control it.  Nor do we know what was to happen if one of the parties failed to perform under the contract.  For all we know, the contract could have noted that the scope of BCN's performance was merely to pay upon delivery of the grates.

Other than vague witness testimony establishing the mere existence of an agreement between the parties—that Railing Systems would install the custom iron grates—there is no evidence of the contract in the record.  No witness in circuit court testified to its *scope or contents*.[10] The circuit court received into evidence no document dictating the scope or contents of the contract.  As a result, we do not know which party held which role or responsibility.  We do not know the

---

[10] The majority seems to think that the witness testimony we have in the record is enough to highlight the terms of the contract between the parties, noting "[t]he work that Railing Systems completed for BCN Design Build was work that was required under BCN Design Build's contract to build the home."  However, this is merely the explanation of the contract's subject matter.  Our Supreme Court has noted that essential contract terms include price, performance, and definiteness. *See, e.g.*, *Wilburn v. Mangano*, 299 Va. 348, 353-54 (2020) ("Price is a material term, and it must be either 'fixed by the agreement itself' or the agreement must provide a mode 'for ascertaining it *with certainty*,' in order for a court to enforce specific performance." (quoting *Parker v. Murphy*, 152 Va. 173, 184 (1929))); *Rolfs v. Mason*, 202 Va. 690, 692 (1961) (noting the importance of performance terms); *Smith v. Farrell*, 199 Va. 121, 127-28 (1957) ("Another essential element of a valid contract is certainty and completeness.  The element of completeness denotes that the contract embraces all the material terms; that of certainty denotes that each one of those terms is expressed in a sufficiently exact and definite manner.  An incomplete contract, therefore, is one from which one or more material terms have been entirely omitted.").  We must then have proof that the parties assented to each of these elements. *See Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2008) ("[In all contracts of sale,] mutuality of assent[, which is] the meeting of the minds of the parties[,] is an essential element.").  Railing Systems has not met its burden by providing us with the scope and terms of the contract, as we do not know the materials terms of the contract. *See Smith*, 199 Va. at 127 ("An uncertain contract is one which may, indeed, embrace all the material terms, but one of them is expressed in so inexact, indefinite or obscure language that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect.").

performance required by both parties. We do not know whether BCN would supervise the project or merely pay upon completion of the service, as was the situation in the many delivery cases noted by the majority. *See, e.g., Hipp v. Sadler Materials Corp.*, 211 Va. 710, 710-11 (1971). The majority rightly notes that "we must *not* ignore all that we *do* know about the contract." I contend that we only know the subject matter.

Without a better understanding of the material terms of the parties' contractual agreement, we cannot say that there is enough evidence to establish BCN contracted or was hired to manufacture and install custom ironwork under its ultimate residential construction contract. Railing Systems had an opportunity to cross-examine the witness but did not ask any questions about the contract or the scope of the project. As a result, Railing Systems, as the movant on the plea in bar, did not present sufficient evidence to show that manufacturing and fabricating custom-fit ironwork is "obviously" performing a sub-contracted fraction of the main contract. *See Cornell*, 301 Va. at 349 (noting the movant bears the burden of proof on a plea in bar heard ore tenus).

The majority argues that we must ignore all that we do not know about the contract because we have limited "fact-finding power" as an appellate court. However, our authorized appellate review is, by definition, to determine whether a reasonable factfinder could conclude that the evidence was enough to show Railing Systems' custom ironwork was a sub-contracted fraction of the main contract. Because we have no evidence of the performance that was dictated by the contract, the record cannot support what was dictated by a sub-contracted fraction. Mathematically, we cannot calculate a fraction without knowing the whole. We do no fact-finding by merely highlighting what the record contains and—in turn—what it does *not*.

In fact, in its precedent cases that turned on the sub-contracted fraction test, our Supreme Court has not settled for mere evidence of an agreement and instead has looked to the *terms* of the contract provided in evidence. *See, e.g., Se. Tidewater Area Manpower Auth. v. Coley*, 221

Va. 859, 861-62 (1981) (noting that the contract dictated the subcontractor's specific duties to effectuate performance of "public service employment programs," including to receive federal funds, render monthly service reports, and furnish data as part of their performance, and request written permission from the general contractor if the subcontractor diverged from these stipulated terms); *Cooke v. Skyline Swannanoa, Inc.*, 226 Va. 154, 156 (1983) (noting the controlling term of a license agreement "provides that a substantial and material violation of any of its terms gives [the general contractor] the right to terminate the license"); *Rodriguez v. Leesburg Bus. Park, LLC*, 287 Va. 187, 191 (2014) (quoting the contract, which stipulated that the subcontractor was "'solely responsible for doing all of the components to build the building'" and "'fully in charge'" of construction, and "was not responsible for obtaining building permits, paying utility fees, '[m]oving . . . the power lines,' or providing 'signage for the project'" (alterations in original)); *Napper v. ABM Janitorial Servs. - Mid Atl.*, 284 Va. 55, 59-60 (2012) (listing the specificities of performance in a cleaning contract, including which rooms were to be cleaned on which days and even ensuring certain listed products like "Windex, Clorox, toilet paper and paper towel[s]" were in each room (alteration in original)); *Cinnamon*, 238 Va. at 473 (noting, under the "conditions to the contract," in part, that the general contractor reserved the rights to "prepare plans and specifications, to approve any changes [the subcontractor] might make in its project manager and general superintendent, to control access to the job site and the amount of dust generated by traffic, to issue and approve change orders, to review job progress reports, and to approve material suppliers and subcontractors"); *Carmody v. F.W. Woolworth Co.*, 234 Va. 198, 200 (1987) (noting the general contractor "offered as evidence a photocopy of a license agreement in which [it] granted to [a subcontractor] a license to operate a portrait photography department in Woolworth's stores, and a photocopy of that portion of an employee

manual describing procedures to be followed by Woolworth employees in regard to [subcontractor] operations in Woolworth's stores").[11]

The majority also notes that, because Railing Systems installed the grate by drilling, bolting, measuring, and mounting it, Railing Systems "performed more than delivery, and the cases limited to delivery are inapposite." However, Railing Systems failed to show the scope of the construction contract between BCN and Railing Systems. As an appellate court with limited "fact-finding power," we cannot say affirmatively whether the contract was for more than mere delivery. Assuming without deciding if we could find there was no more than delivery, the delivery cases show only *one* avenue that a court can use to find a subcontractor is not in the trade, occupation, or business of the general contractor. Importantly, case law does not *mandate* that a subcontractor show it is a delivery system to escape the normal-work or sub-contracted fraction tests.

The majority finally notes that the circuit court was not persuaded that BCN could not perform welding. In so doing, it has accused Mr. Villarroel of focusing on isolated statements. And yet this is what the majority has done. The fact that BCN *could* weld does not mean they *do* weld. *See Bassett Furniture*, 216 Va. at 903 ("Mere capacity to perform, standing alone, is not determinative" of what is "normally carried on" by the general contractor.). And the record, by way of Mr. Normile's undisputed testimony, shows that—as part of its regular trade, occupation, or business—BCN does not weld custom ironwork. Instead, BCN hires specialized welders to perform that task.

---

[11] The majority states that "except for one of the cases the dissent cites in the paragraph in question, none of them even mention whether there was a contract on record." First, the joint appendices and records of the cases cited after 1990 confirms that there were physical contracts in the record. Second, the majority's analysis again misses the point: the Court's analysis in *all of* the cases noted in this dissent reveals that the Court was presented with evidence of specific, material contractual terms, many of which were discussed in granular detail.

Railing Systems did not meet its burden to show that either the normal-work or sub-contracted fraction test applied, so it did it show that Villarroel and Railing Systems were statutory co-employees under the Workers' Compensation Act. Therefore, Mr. Villarroel should recover for a painful accident that occurred on the jobsite at no fault of his own. For this reason, I respectfully dissent.